McIlvaine, C. J.
Where goods are delivered by a vendor to a common carrier, consigned to the vendee, the question, whether the title thereby passes from the vendor to the vendee, depends upon the intention of the vendor, which intention is to be gathered from all the circumstances of the-transaction.
If the goods be shipped in pursuance of the purchaser’s-order and at his risk, or if it otherwise appear to be the intention of the shipper to part with the title, the carrier becomes the agent of the consignee, and the delivery to him is equivalent to a delivery to the purchaser. If the vendor, however, in making the consignment and delivering the goods to the carrier, does not intend to part with his title to and control over them, the carrier must be regarded as ■ the agent of the consignor and not of the consignee.
In all such transactions, the bill of lading is an important item of proof as to the intention, but it is not necessarily conclusive of the question. If the bill of lading shows that the consignment was made for the benefit of the consignor or his order, it is very strong proof of his intention to reserve the jus disponendi. And on the other hand, if the bill of lading shows that the shipment is made for the benefit of' the consignee, it is almost decisive of the consignor’s intention to part with the ownership of the property. If the bill of lading does not disclose the person for whose benefit the-consignment is made, it is of less weight on the question of' *366 the shipper’s intention. We have no doubt, however, that if the bill of lading shows a consignment by vendor to vendee, and no other circumstance appears as to the intention, it will be taken as prima facie evidence of an unconditional ■delivery to the vendee.
As between the consignor and consignee, the bill of lading can not be regarded as a contract in writing, but merely as ■an admission or declaration on the part of the consignor as to his purpose, at the time, in making the shipment, and ■such admission is subject to be rebutted by other circumstances connected with the transaction.
By the rules of commercial law, bills of lading are regarded ■as symbols of the property therein described, and the delivery •of such bill by one having an interest in or a right to control the property, is equivalent to a delivery of the property itself. A consignor who has reserved thejws disponendi, may ■effectuate a sale or pledge of the property consigned, by delivery of the bill of sale to the purchaser or pledgee, as completely as if the property were, in fact, delivered. If such transfer of the bill of lading be made after the property has passed into the actual possession of the consignee, the transferee of the bill takes it subject to any right or lien which the consignee may have acquired by reason of his possession. But if the bill of lading be transferred by way of sale or pledge to a third person, before the property comes into the possession of the consignee, the consignee takes the property ■subject to any right which the transferee of the bill may have acquired by the symbolic delivery of the property to him.
The principle on which the title to goods may be transferred by a transfer of the bill of lading, is wholly distinct from that on which the right of stoppage in transitu rests. The right to stop goods in transit, exists only where the vendor has consigned them to the buyer under circumstances which vest the title in the buyer. The transfer of goods by •delivering the bill of lading, can be made only in cases whei’e the vendor has not parted with the title.
In the ease before us, it must be assumed that the court *367 below, at general term, found from the evidence, that Mirrielees did not intend, by delivering the stearine to the carrier, to vest the title in Emery’s Sons absolutely as purchasers, but only on condition that they would accept and pay the bills of exchange drawn on account thereof. It is true that this intention was not expressed on the face of the bills of lading, but it fully appears from other facts and circumstances. The letter of Mirrielees, of the date of each shipment, containing the invoice of the goods, and informing the consignees that the invoice had been valued (drawn against) that day; the drawing of the bills of exchange on account of the invoices and for their full value; the indorsement of the bills of exchange with bills of lading attached, and their, delivery to Irving National Bank on discount, all on the day of shipment, clearly show the intention of Mirrielees at the time of shipment, to reserve the jus disponendi. And this conclusion is much strengthened by the further fact that previous transactions between the same parties had been conducted in the same way, without objection.
Upon this theory of the case, we are of opinion that Irving National Bank, by discounting the bills of exchange with the bills of lading attached, became vested of the property consigned to Emery’s Sons, as a security for the payment of the drafts, as fully and completely as if the stearine itself had been delivered into its actual possession, and was entitled to demand from the consignees an account of the proceeds of sales or the price of the goods.
It is claimed, however, that these bills of lading were not transferable by delivery merely, for the reason that they were not made so negotiable by their terms. Bills of lading are not, and can not be made, by any form of words, negotiable in the sense that commercial paper payable to bearer, .or order, or assigns is negotiable. If such words of negotiability be contained in them, they only indicate the intention of the shipper as to the person for whose use the consignment is made. If the goods be deliverable, by the terms of the bill, to the consignee or his order, there can be no doubt that the person to whom the bill may be transferred *368 by tbe consignor, would be charged with notice of the rights of the consignee, and on the other hand, if the bill be made to the use of the consignor or his order or his assigns, the consignee would be charged with notice of the rights of those to whom the bill may have been transferred. But in either case, the question is open to inquiry as to what such rights may be, and can be determined only by inquiry into the real nature and character of the transaction.
A bill of lading, being symbolical of the property described in it, like the property it represents, may be transfered by delivery merely, and this is so, without regard to-the presence or absence of words of negotiability on its face. It is unlike commercial paper, however, in this — the assignee can not acquire a better title to the property thus symbolically delivered, than his assignor had at the time of assignment.
It is also claimed that these bills- of lading were not transferred to the bank until after the consignees had obtained possession of the goods, and a right had thereby accrued to them to hold the goods, or the price thereof, for the satisfaction of the claims due them from their consignor. This claim is based on the theory that the possession of the carrier was the possession of the consignees, and has already been answered. "We do not understand it to be claimed that the goods were, in fact, delivered to the consignees by the carrier, before the transfer to the bank of the bills of lading. But if it were so claimed, we could not disturb the finding of the court below on that question. Prom the weight of the testimony, we think the bills of lading had been transferred to the bank before the goods arrived at the place of their destination.
On petition in error by the plaintiff below, the Superior Court, sitting in general term, reversed the judgment rendered at special term in favor of the defendants, and remanded the cause to special term with instructions to the judge there sitting to render judgment for the plaintiff,, which was done accordingly. In this we think there was error. The only question before the general term was as to- *369 the alleged error of the court at special term iu overruling the motion of the plaintiff for a new trial. "When that error was found by the reviewing court the judgment below was properly reversed, and the only judgment which should have been rendered after reversal, was to grant a new trial as moved for at special term. The plaintiff not being entitled to judgment on the pleading, and there being no-agreed statement of facts, or a special finding of fa'cts by the-court to which the case had been submitted on the evidence, it was not a case for final judgment. The order made at the general term, that the judgment be rendered at special term, will therefore be reversed. The judgment afterward entered in favor of the plaintiff is also reversed, and the-cause remanded to the court below with instructions to-grant the plaintiff below his motion for a new trial, and that it proceed to final judgment in the cause according to-law. Judgment reversed.
Welch, White, Rex, and Gilmore, JJ., concurred.